## FORD, AND OTHERS, v. THE BRANCH OF THE BANK OF THE STATE OF ALABAMA AT DECATUR.

1. When a bank accepts a proposition from the drawer of a bill to take into its possession a stock of goods to be applied *pro rata*, to all his debts, it is not a discharge of his indorsers, although the goods are afterwards taken and sold by the bank, but the sum received is an extinguishment *pro tanto.*

2. The certificate required to be made by the president of a bank, that the debt is really and *bona fide* its property, may be made at the trial or at any time before judgment.

WRIT of error to the Circuit Court of Morgan county.

Motion for judgment by the Bank, against Ford, Wise and

Sherrod, as the several endorsers of a bill of exchange described in the notice.

When the cause was at trial, the Bank, for the purpose of showing the jurisdiction of the court, proposed that the president thereof should make the usual certificate, that the bill of exchange sued on, was a debt, really and *bona fide*, the property of the said Bank. And a certificate was then made and signed by the said president, purporting to be given in open court, of the same date as the day of trial. This certificate is in the present tense, and was objected to by the defendants; but their objection was overruled, and the certificate read for the purpose for which it was offered.

The defendants then proved, that John S. Rhea, who is the drawer of the bill sued on, made a proposition to the Bank, dated the 28th August, 1839, in which he stated that, owing to recent circumstances, he believed it to be his immediate duty to place his means in such a situation, that they could only be taken to pay his own proper and legitimate liabilities; and to that end, he proposed to make a transfer of his stock of groceries and dry goods, amounting to upwards of 20,000 dollars at prime cost, to the Bank, to be applied *pro rata* on his liabilities, with the exception of a certain bill of exchange described in the proposal. Certain debts, embraced in an assignment of real estate, were also excluded by the proposition. It also stated that three debts, of 2,000, 2,500 and 2,500 dollars, due in the names of certain persons therein stated, were intended to be included by it. It then concludes with a statement, that he is willing to make the transfer first, and the terms of sale of the stock to be agreed on by a committee appointed by the board of directors and himself. At the foot of the proposition is a memorandum, that another debt of 3500 dollars, standing in the names of other persons, is his, and is to be taken in the proposition.

This proposition was agreed to on the part of the Bank, and an agent sent for the purpose of taking the goods in charge.

It was also proved, that the dry goods, mentioned in the proposition, had been sold according to stipulation, and that no sale of the groceries had been made as contemplated; and that the Bank had made no effort to sell them in the mode provided for by the agreement, but the same had been sold without consulta-

tion with Rhea, and against his consent, allowing him, however, their estimated value, as deposed to by a witness.

It was also in evidence, that the bill of exchange sued on was one of the demands alluded to, and included in the proposition of Rhea, before stated.

On this state of proof, the defendants requested the court to charge the jury, that if they should believe the contract between Rhea and the Bank, contained in the proposition and acceptance, applied to the debt now sued for, and that the proceeds of the goods were to be applied to the credit of this demand, then that the said contracting between the said Rhea and the Bank was a discharge in law of the defendants; and, in that event, they should find in their favor.

This was refused; and the court instructed the jury, that if such a contract existed, it was no discharge to the defendants, except to the extent of the value of the goods and groceries. The defendant excepted to the refusal to give the charge as asked, and also to that given.

It is now assigned as error:

1. That the record does not declare that the court had jurisdiction of the cause at the time of its commencement.

2. That the certificate of the president could not be made in court, or received after the cause had gone to the jury.

3. That the court erred in giving and refusing the charges as shown by the bill of exceptions.

COOPER, for the plaintiff in error.

ARMSTRONG, contra.

GOLDTHWAITE, J.—1. The proposition by Rhea, and its acceptance by the Bank, does not amount to a contract to pay 20,000, or any other specific sum for the goods; and if there was any subsequent agreement between them, ascertaining how the goods and groceries should be sold, it is not brought to our view by the bill of exceptions. The mere acceptance of this proposition, or even the taking of the goods under it, was no discharge to these parties. All that they have a right to require is, that the proceeds of the goods, when sold, should be faithfully applied to the discharge, pro rata, of the debts intended to be covered by Rhea's proposition.

The Bank had the right, most certainly, to accept from Rhea any additional security for the debts due by him, and such an acceptance is for the benefit of those who are collaterally, or even directly liable for the same demands.

What might be the effect of a misappropriation of the proceeds, or of a conversion of the goods thus placed in the hands of the Bank, is a question not raised in the court below, and we can perceive no error in refusing to give the charge asked for, or in that given.

2. The objection to the certificate, and to the period when it was made, cannot avail the defendants. The object of requiring a certificate was to prevent suits from being instituted in the name of the Bank, when it had no real interest in the action. It is true, the charter of the Bank provides, that it may move for judgment upon producing to the court the certificate of its president that the debt is really and *bona fide* its property, [Clay's Digest 96, § 8;] but this by no means indicates that the certificate must necessarily be in existence before the motion is made. Let it be supposed that a defective certificate is produced in the first instance; can it be tolerated that the Bank is powerless to avoid the consequences which must flow from that condition of the paper? The construction contended for would prevent the proper officer from correcting his mistakes, unless they were discovered previous to the motion. The constant practice is, we believe, to make out their certificates after notice has been given, and we can perceive no reason why it may not be made at any time before the rendition of the judgment.

Judgment affirmed.